| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**Edmond M. George, Esquire**<br>**William F. Saldutti IV, Esquire**<br>**Obermayer Rebmann Maxwell & Hippel LLP**<br>**1120 Route 73, Suite 420**<br>**Mount Laurel, NJ  08054**<br>**(856) 795-3300**<br>**(856) 482-0504 (fax)**<br>*Attorneys for Ron and Rima Seal* | |
| **In re:**<br><br>**MATHEW K. PIERSON**<br><br>          **Debtor.** | **Chapter 7**<br><br>**Case No.  21-11080-KCF** |
| **RON AND RIMA SEAL**<br><br>          **Plaintiffs,**<br><br>   **v.**<br><br>**MATHEW K. PIERSON,**<br><br>          **Defendant.** | **ADVERSARY NO.**<br><br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |

Ron and Rima Seal (the "Seals" or the "Plaintiffs"), by and through their undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby file this Complaint to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6), and allege as follows:

4849-9190-0136

**I.    THE PARTIES**

1.    Plaintiffs, the Seals, are adult individuals who reside at 1 Palmer Drive, Glen Mills, Pennsylvania 19342 and the parents of Simone Seal ("Simone"), a thirty-two (32) year old woman.

2.    Mathew K. Pierson ("Mr. Pierson" or the "Defendant") is an adult individual who is the debtor in the above-captioned Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the District of New Jersey with a claimed principal residence of 478 Federal City Rd, Pennington, New Jersey 08534.

3.    Mr. Pierson, the purported boyfriend of Simone, improperly and intentionally inserted himself into a dispute between Simone and her parents, the Seals.

**II.    JURISDICTION AND VENUE**

4.    This adversary proceeding is a core proceeding pursuant to § 157(b) of Title 28 of the United States Code.  This Court has jurisdiction pursuant to § 157 and § 1334(b) of Title 28 of the United States Code, and the General Order of Reference of the United States District Court for the District of New Jersey.

5.    This adversary proceeding arises in a case under the Bankruptcy Code pending in this District and, thus, venue properly lies within this District pursuant to § 1409(a) of Title 28 of the United States Code.

6.    This is an adversary proceeding brought under and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and §§ 105 and 523 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code").

7. This adversary proceeding arises under and in connection with the above-captioned Chapter 7 bankruptcy case commenced by the filing of a voluntary petition by Mathew K. Pierson on or about February 8, 2021 (the "Petition Date").

### III. FACTUAL BACKGROUND

8. That dispute was initiated by Simone Seal in the Philadelphia Court of Common Pleas, No. 01173 (the "State Court Action"), where the Philadelphia Court of Common Pleas (the "PA State Court") found fully in favor of Seals with regard to all of Simone's claims against the Seals.

9. In addition to defending against the claims brought by Simone in the State Court Action, the Seals brought counter-claims against Simone Seal and third-party claims against Mr. Pierson, alleging that Mr. Pierson had intentionally and maliciously published false information about the Seals that was highly offensive to a reasonable person.

10. The facts alleged in the State Court Action included that Simone Seal and Mr. Pierson, after spending the July 4th weekend at the Inner Harbor with the Seals, traveled back to the Seals personal residence and stayed at the Seals' personal residence without the Seals' knowledge and consent.

11. During Mr. Pierson's unpermitted stay at the Seals' residence, he and Simone Seal went through personal files of the Seals, including personal calendar books, ledgers and journals

of Mrs. Seal, tax documentation, employment documents, and bank statements. Mr. Pierson admitted in the State Court Action that he had no right to review the personal items.[1]

12. After Mr. Pierson improperly reviewed the private material and documentation of the Seals, he began a campaign of publicizing and disseminating to third persons horrific, baseless accusations regarding the Seals, none of which were grounded in any actual facts and were designed to cast the Seals and their private affairs in a false light. Those accusations were disseminated and publicized both verbally, and through texts Mr. Pierson sent.

13. Among the ***horrific, false, and baseless*** accusations publicized and disseminated to third persons and the public regarding the Seals (the majority of which was established at trial through Mr. Pierson's own texts and admissions) were that:

    a) While married, Mrs. Seal was involved in "sexcapades" with other men where she would use them for personal gain;

    b) Mrs. Seal had Simone kidnapped[2]

    c) just a little over a day after taking the personal material of the Seals from their home, informing the Seals' son that "both of [his] parents were going down";

    d) Informing a close friend of the family, Kristen Formosa, that the district attorney in Virginia was pursuing a criminal case against the Seals involving financial crimes by Mrs. Seal, and that the authorities were using the State Court Action brought against him to collect evidence;

    e) Mr. Seal had committed tax fraud;

    f) Mrs. Seal intended to kill or harm their son and granddaughter;

    g) Mrs. Seal had conspired with her former husband's (and Simone's biological father) brother to have her former husband murdered;

---

[1] In a text, Mr. Pierson stated that the documents had been taken from a "locked" part of Mrs. Seal's desk as well as a giant trunk in the basement.
[2] Mr. Pierson's dissemination of private information relating to the Seals began only a day or two after he had gone to house under false pretenses and at a time when he had only met the Seals on a handful of occasions.

  h) Mrs. Seal had defrauded Simone out of millions of dollars; that Mrs. Seal used to "beat the shit" out of Simone; that the Seals were backed into a corner; that the Seals were going to kidnap their granddaughter; and that he and Simone had a protection from abuse order against the Seals.[3]

  i) the Seals were under investigation by the district attorney and the FBI and that they would be tried and go away for life; and

  j) Simone was kidnapped from her biological father (Mr. Bruce V. Hill) when she was a child and her father was dead within three weeks of a kidnapping case being filed.[4]

14. Within the State Court Action, the Seals asserted claims against Mr. Pierson for the tort of invasion of privacy by false light.

15. Under Pennsylvania Law, a person is liable for invasion of privacy, for publicly placing another in a false light where they (1) publish (2) matters concerning another (3) that places another in a false light, where (4) the false light would be "highly offensive to a reasonable person" and (5) the publisher had knowledge or acted in a reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

16. After a full trial where Mr. Pierson was represented by counsel, the PA State Court found that Mr. Pierson, who touts himself as a "high school teacher and educated man who understood the consequences of his actions," recklessly published false information about the Seals such as:

---

[3] None of the statements contained in Mr. Pierson's texts were true including the reference to a protection for abuse order being in place as it had been summarily dismissed in July 2017 without Mrs. Seal even testifying.

[4] None of the statements were true. To the contrary, Mrs. Seal and Simone's biological father were separated during which time, Mrs. Seal was residing in Pennsylvania where she had custody of Simone and Mr. Bruce V. Hill was a City of Alexandria police officer who died in 1991 from cardiomyopathy shortly after being involved in a foot chase with a suspect.

(a) stating to Simone's daughter's father that Mrs. Seal kidnapped Simone when she was a child, that Simone's biological father was "dead within three weeks of a kidnapping case being filed," that the Seals were under investigation by the District Attorney and the Federal Bureau of Investigation, that they would be tried "soon" and be imprisoned for life, and that the Seals intended to kidnap Simone's daughter (the Seals granddaughter);

(b) stating to the Seals' son, that they were "going down" and that Mrs. Seal took money from Simone;

(c) stating to Mr. Seal's niece that the District Attorney in Virginia was gathering evidence against the Seals and was using the State Court Action to bring charges, that Mrs. Seal had committed financial crimes, and that Mr. Seal committed tax fraud;

(d) stating to Mr. Seal that his wife had conspired to have Mr. Bruce V. Hill murdered;

(e) stating that Mrs. Seal defrauded Simone out of millions of dollars, that she "beat the shit out of" Simone, and that Simone had a Protection From Abuse Order in place against the Seals; and

(f) stating to the Seals' granddaughter, that they had lied to Simone and stolen money from her.

17. The PA State Court specifically found that *any* one of the above statements would be "highly" offensive to a reasonable person, where given the reckless and intentional nature of the false-light publication by Mr. Pierson, the Seals sustained damage to their reputation, standing in the community, and personal humiliation and the PA State Court entered a judgment against Mr. Pierson in the amount of $6,000.00. A copy of the Findings of Fact and Conclusions of Law in the State Court Action are attached hereto as **Exhibit " A"** and incorporated herein

18. As of the date of this filing, the judgment is final, un-appealed, and unpaid.

19. In his Bankruptcy Petition, Schedules of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules"), Mr. Pierson intentionally and maliciously failed

to disclose not only the State Court Action, but the fact that a non-dischargeable debt and judgment had been entered against him.

20. Under the penalty of perjury in the Schedules, Mr. Pierson answered "no" to the question as to whether he was a party in any lawsuit or court action within one year of filing for bankruptcy. This was clearly an intentional and knowingly false statement, particularly given the fact that Mr. Pierson participated in and was represented by counsel in the State Court Action just a few months before filing for bankruptcy.

21. In fact, when the Seals' counsel inquired as to when they could expect to receive payment from Mr. Pierson in August 2020, his counsel replied in an e-mail: "uh, never." Likewise, on February 6, 2021, just days before the Petition Date, the Seals' counsel once again asked when payment of the judgment could be expected. Mr. Pierson's counsel replied the same day: "Do u know what never is."

22. This is not a scenario of forgetfulness or inadvertence on Mr. Pierson's part, but an intentional attempt to deceive the Bankruptcy Court and creditors and wrongfully obtain a discharge of the underlying claims, which led to the judgment against Mr. Pierson. This judgment falls squarely within the confines of Section 523(a)(6) of the Bankruptcy Code.

23. Other misrepresentations exist within Mr. Pierson's bankruptcy petition. For example, Mr. Pierson misrepresented that he had not lived in the past three (3) years anywhere other than where he now claims to live. That is certainly not true as Mr. Pierson lived in Philadelphia, Pennsylvania, with his girlfriend, Simone.

24. Likewise, Mr. Pierson misrepresented that he had not given any gifts with the total value of more than $600.00 per person within two (2) years before filing for bankruptcy, when

his girlfriend, Simone, has posted pictures on social media of a significant diamond ring purportedly given to her by Mr. Pierson.

25. Finally, Mr. Pierson misrepresented that he has a daughter who is his dependent. That is not the case under any circumstances.

## COUNT I
## NONDISCHARGEABILITY OF DEBT
## 11 U.S.C. § 523(a)(6)

26. The Seals incorporate the preceding paragraphs by reference as if set forth fully herein and at length.

27. Mr. Pierson's highly offensive and intentional actions, as found by the PA State Court in the State Court Action, are the very sort of actions which are intended to be excepted from discharge under Section 523(a)(6) of the Bankruptcy Code.

28. Pierson's willful and malicious actions were designed and intended to cause injury to the Seals and damage the Seals' reputation and standing in the community and cause them personal humiliation.

29. Pierson's willful and malicious actions were wrongful and were done without just cause or excuse as found in the State Court Action.

30. Pierson's actions willfully and maliciously injured the Seals in the amount of $6,000.00, as found in the State Court Action. See **Exhibit "A"** attached hereto.

31. The Seals' damages, as determined in the State Court Action, should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Ron and Rima Seal pray this Honorable Court enter a judgment against Mathew K. Pierson, holding that the judgment and debt owed to the Seals, in the amount of $6,000.00, is nondischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code and for such other relief as this Court deems just.

Respectfully submitted,

Dated: May 6, 2021

By: */s/ Edmond M. George*
Edmond M. George, Esquire
William F. Saldutti IV, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
1120 Route 73, Suite 420
Mount Laurel, NJ  08054
(856) 795-3300
(856) 482-0504 (fax)
*Attorneys for Ron Seal and Rima Seal*