| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br>Nicholas Poduslenko, Esquire<br>Edmund M. George, Esquire<br>Obermayer Rebmann Maxwell & Hippel LLP<br>1120 Route 73, Suite 420<br>Mount Laurel, NJ  08054<br>(856) 795-3300<br>(856) 482-0504 (fax)<br>*Attorneys for Ron and Rima Seal* | |
| **In re:**<br><br>**MATHEW K. PIERSON**<br><br>Debtor. | **Chapter 7**<br><br>**Case No.  21-11080-KCF** |
| **RON AND RIMA SEAL**<br><br>Plaintiffs,<br><br>v.<br><br>**MATHEW K. PIERSON,**<br><br>Defendant. | **ADVERSARY NO. 21-1264**<br><br>**CERTIFICATION OF RIMA SEAL IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING PURSUANT TO F.R.C.P. 56, 12(b)(6) and 8(a)(2)** |

I, Rima Seal am one of the Plaintiffs in the above-captioned matter, am the spouse of Ron Seal, and I have personal knowledge of the facts stated below, and I am authorized to make the following statements:

  1. The uncontroverted facts can be found in the trial court's findings of fact and in Mr. Pierson's own words as described herein where Mr. Pierson, the purported boyfriend of Simone

Seal, improperly and intentionally inserted himself into a dispute between Simone and her parents, Ron and Rima Seal (the "Seals").[5]

2. That dispute arose when Simone, a then 29-year-old woman, brought suit against the Seals in the Philadelphia Court of Common Pleas (the "State Court Action") where the trial court (the "PA State Court") found fully in favor of Seals on all of Simone's claims against the Seals.

3. In addition to defending against the claims brought by Simone in the State Court Action, the Seals brought third-party claims against Mr. Pierson, alleging that Mr. Pierson had published false information about the Seals that was highly offensive and reprehensible to any reasonable person.

4. The basis for the claim against Mr. Pierson included the fact that Simone and Mr. Pierson, after spending the July 4th weekend at the Inner Harbor with the Seals, traveled back to the Seals personal residence and stayed at the Seals' personal residence without the Seals' knowledge and consent.

5. During Mr. Pierson's unpermitted stay at the Seals' residence, he and Simone Seal went through personal files of the Seals, including personal calendar books, ledgers and journals of Mrs. Seal, tax documentation, employment documents, and bank statements. Mr. Pierson admitted in the State Court Action that he had no right to review the personal items.[6]

6. After Mr. Pierson improperly reviewed the private material and documentation of the Seals, he began a campaign of publicizing and disseminating to third persons reprehensible,

---

[5] For purposes of consistency with our brief in opposition to Mr. Pierson's motion and simplicity, I refer to myself and my husband in the third person.
[6] In a text, Mr. Pierson stated that the documents had been taken from a "locked" part of Mrs. Seal's desk as well as a giant trunk in the basement. *See* Exhibit "A."

2

baseless accusations regarding the Seals which were designed to harm their reputation and standing in the community and personally humiliate and embarrass them.

7.  Those accusations were disseminated and publicized both verbally and through texts Mr. Pierson sent.

8.  Among the *reprehensible and baseless* accusations disseminated by Mr. Pierson regarding the Seals (the majority of which was established at trial through Mr. Pierson's own texts and admissions) were that[7]:

   a) While married, Mrs. Seal was involved with other men where she would use them for personal gain. *See* Exhibit "A;
   b) Mrs. Seal had Simone kidnapped when she was a child, where the natural father was "dead" within three weeks of a kidnapping case being filed,[8] that the Seals were under investigation by the District Attorney and the Federal Bureau of Investigation, that they would be tried "soon" and be imprisoned for life, and they intended to kidnap their granddaughter, Mariah. *See* Exhibit "B," State Court findings of fact at ¶163(a);
   c) Just over a day after taking the personal material of the Seals from their home, informing the Seals' son that "both of [his] parents were going down." *Id.* at ¶163(b);
   d) Informing the Seals' niece, Kristen Formosa, that the district attorney in Virginia was pursuing a criminal case against the Seals involving financial crimes by Mrs. Seal, and that the authorities were using the State Court Action brought against him to collect evidence. *Id.* at ¶163(c);
   e) Mr. Seal had committed tax fraud. *Id.* at ¶163(c);
   f) Mrs. Seal had conspired with her former husband's (Simone's biological father) brother to have her former husband murdered. *Id.* at ¶163(d);[9]
   g) Mrs. Seal had defrauded Simone out of millions of dollars; that Mrs. Seal used to "beat the shit" out of Simone; that the Seals were backed into a corner. *Id.* at ¶163(e); and

---

[7] Mr. Pierson's dissemination of private information relating to the Seals began only a day or two after he had gone to house under false pretenses and at a time when he had only met the Seals on a handful of occasions.

[8] None of the statements were true. To the contrary, Mrs. Seal and Simone's biological father were separated during which time, Mrs. Seal was residing in Pennsylvania where she had custody of Simone and Mr. Bruce V. Hill was a City of Alexandria police officer who died in 1991 from cardiomyopathy shortly after being involved in a foot chase with a suspect.

[9] In that particular text, Mr. Pierson stated that Mrs. Seal had conspired with her brother-in-law to have her former husband murdered because he was worth a ****load of money dead. *See* Exhibit "C."

3

    h) Mrs. Seal is a horrendous human being and terrible, terrible, terrible person, that the Seals were going to try to use the granddaughter, Mariah, to **** everything up, that the Seals are going to try to **** with Mariah's father, and the Seals were backed into a corner. *See* Exhibit "D."

9.    After a full trial where Mr. Pierson was represented by counsel, the PA State Court found that Mr. Pierson, who touted himself as a high school teacher and educated man who should understand the consequences of his actions, published false information about the Seals such as:

    a) stating to Simone's daughter's father that Mrs. Seal kidnapped Simone when she was a child, that Simone's biological father was "dead within three weeks of a kidnapping case being filed," that the Seals were under investigation by the District Attorney and the Federal Bureau of Investigation, that they would be tried "soon" and be imprisoned for life, and that the Seals intended to kidnap Simone's daughter (the Seals granddaughter);

    b) stating to the Seals' son, that they were "going down" and that Mrs. Seal took money from Simone;

    c) stating to Mr. Seal's niece that the District Attorney in Virginia was gathering evidence against the Seals and was using the State Court Action to bring charges, that Mrs. Seal had committed financial crimes, and that Mr. Seal committed tax fraud;

    d) stating to Mr. Seal that his wife had conspired to have Mr. Bruce V. Hill murdered;

    e) stating that Mrs. Seal defrauded Simone out of millions of dollars, that she "beat the shit out of" Simone, and that Simone had a Protection From Abuse Order in place against the Seals; and

    f) stating to the Seals' granddaughter, that they had lied to Simone and stolen money from her.

Exhibit "B," at ¶163.

10.    The PA State Court specifically found that *any* one of the above statements would be "highly" offensive to a reasonable person where given the nature of the reprehensible statements, the Seals sustained damage to their reputation, standing in the community, and personal humiliation. Exhibit "B" at ¶164.

11.    At trial, on cross-examination, Mr. Pierson admitted he had no facts or evidence to support any of the statements made. *See* portions of trial transcript attached hereto as Exhibit "E," at pp.180-182.

12. In relation to one particular text, Mr. Pierson said that Mrs. Seal had conspired with her former husband's brother to have him murdered because he was worth a **** load of money dead where he advised that the FBI and the state of Virginia District Attorney were coming after the Seals.

13. When asked whether he agreed that would be something that would worry someone to whom he made such statement, Mr. Pierson's response was "I would hope it would worry someone. It is a worrying thing." Id. at pp.181- 183.

14. At deposition, Mr. Pierson was asked about his text that Simone was kidnapped from her father and then dead within three (3) weeks of a kidnapping case being filed. Mr. Pierson agreed that he was telling others that Mrs. Seal had her former husband killed and that it was "okay" to be telling others that Mrs. Seal killed her former husband despite having no evidence. When asked if such baseless claims were damaging to Mrs. Seal, Mr. Pierson callously responded "Ask her."

15. When asked if he needed to have facts to support such a claim, Mr. Pierson responded "I guess we'll see" where he refused to provide a single fact. In his own words, Mr. Pierson said "I'm not going to." See portions of Mr. Pierson's deposition transcript attached hereto as Exhibit "F," at pp. 219-222.

I certify that the above statements made by me are true and correct to the best of my knowledge. I am aware that if any of the foregoing statements made by me are incorrect, I am subject to punishment.

RIMA SEAL
Plaintiff

Dated: February 21, 2022

4888-0524-2636 v2