# EXHIBIT E

# First Judicial District of Pennsylvania

*171101173*
*Seal Vs. Seal*

---

*Trial (Waiver) Volume 6*
*November 01, 2019*



---

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File 11-01-2019.txt, 263 Pages*
*CRS Catalog ID: 20010332*

## Page 1

```
[1]         IN THE COURT OF COMMON PLEAS
       FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[2]              CIVIL TRIAL DIVISION
[3]                      - - -
[4]
[5] SIMONE A. SEAL          : NOVEMBER TERM, 2017
                            : NO: 01173
[6]      vs.                :
      a
[7] RIMA VANHILL-SEAL and   :
    RONALD T. SEAL          :
[8]
                         - - -
[9]
[10] RIMA VANHILL-SEAL and  :
     RONALD T. SEAL
[11]                        :
         vs.                :
[12]                        :
     SIMONE A. SEAL and
[13] MATTHEW PEARSON        :
[14]
[15]            City Hall
                Room 246
[16]       Philadelphia, Pennsylvania
[17]              - - -
[18]         November 1, 2019
[19]              - - -
[20]              Trial
[21]              - - -
[22]
       BEFORE:  THE HONORABLE GLYNNIS HILL
[23]
[24]              - - -
[25]        Jacqueline Froncek,
            Official Court Reporter
```

## Page 2

```
[1] APPEARANCES:
[2]
[3]     Stuard Winegrad, Esquire
        -- For Simone Seal
[4]
[5]     Nicholas Poduslenko, Esquire
        -- For Ronald Seal and Rima Vanhill Seal
[6]
[7]     Jonathan Sobel, Esquire
        -- For Matthew Pearson
```

## Page 3

```
[1]                    - - -
[2]                  INDEX
[3]                    - - -
[4] WITNESS:                           PAGE
[5] RIMA VANHILL SEAL
[6]    By Mr. Poduslenko                 5
       By Mr. Winegrad                  57
[7]    By Mr. Sobel                     74
       By Mr. Poduslenko               120
[8]    By Mr. Winegrad                 123
       By Mr. Sobel                    126
[9]
[10] MATTHEW PEARSON
[11]   By Mr. Poduslenko               132
       By Mr. Sobel                    197
[12]   By Mr. Poduslenko               210
[13] RONALD THOMAS SEAL
[14]   By Mr. Poduslenko               216
       By Mr. Winegrad                 222
[15]   By Mr. Sobel                    225
[16] SIMONE SEAL
[17]   By Mr. Winegrad                 240
```

## Page 4

[1] **THE COURT**: Counsel, if we could re-call --
[2] **MR. PODUSLENKO**: It was Rima Seal.
[3] **THE COURT**: Counsel, you were about to cross, I believe.
[5] **MR. PODUSLENKO**: No. I had to finish my direct.
[7] **THE COURT**: Okay. Thank you.
[8] **MR. PODUSLENKO**: And, Your Honor, if permitted, I spoke to Mr. Winegrad, I think we would all like to finish this today.
[11] **THE COURT**: We have to. I have another case Monday.
[13] **MR. PODUSLENKO**: There are a number of texts and other social media things. What I would like to do is point to it, ask her to identify what it is, read it, and ask her what --
[17] **THE COURT**: That is fine. I am going to allow you -- all the parties, actually, a little opportunity to lead today so we can get through this.
[20] **MR. SOBEL**: Judge, can I make a request?
[21] **THE COURT**: Sure.
[22] **MR. SOBEL**: Would it be possible if we took our morning break at around 11:00, so I can make a conference call?
[25] **THE COURT**: So you need about five minutes?

Case 21-01264-KCF   Doc 16-10   Filed 02/22/22   Entered 02/22/22 11:30:01   Desc
Exhibit E   Page 4 of 5

171101173
Seal Vs. Seal

Trial (Waiver) Volume 6
November 01, 2019

Page 177

[1] **THE WITNESS**: Yup.
[2] **BY MR. PODUSLENKO**:
[3] Q. Again, these are more texts that you sent,
[4] correct?
[5] A. Correct.
[6] Q. And this would have been after the lawsuit was
[7] filed, correct?
[8] A. Incorrect.
[9] Q. Incorrect?
[10] A. Sorry --
[11] Q. When did you send the texts, sir?
[12] A. Sorry. Which lawsuit do you mean? The lawsuit
[13] that she filed? Or the lawsuit that was filed against us?
[14] Q. The lawsuit that was filed against you.
[15] A. No. Incorrect.
[16] Q. All right. Was this before or after the lawsuit
[17] she filed?
[18] A. I don't know. It doesn't have a time. I don't
[19] know.
[20] Q. And you didn't produce any texts as part of this
[21] case despite us asking for them, correct?
[22] A. I was not aware I was being asked for texts. You
[23] have all the texts.
[24] Q. You were not aware that we submitted a request
[25] for documents to your attorney?

Page 178

[1] A. I mean, I guess.
[2] Q. Well, you guess. Did your attorney ever send you
[3] a request?
[4] **MR. SOBEL**: Objection.
[5] **THE COURT**: I will sustain. Next question.
[6] **MR. PODUSLENKO**: All right.
[7] **BY MR. PODUSLENKO**:
[8] Q. Page 13 of D-89.
[9] A. Yup.
[10] Q. And you will see there -- this is dated April
[11] 7th. Do you see at the top?
[12] A. Yes. April 7th of what?
[13] Q. April 7th. I said at the top.
[14] A. Yup.
[15] Q. That would be 2018 or '19?
[16] A. '18. Definitely not '19.
[17] **THE COURT**: Hold on one second.
[18] **BY MR. PODUSLENKO**:
[19] Q. And it says, "And your uncle..." Would that be
[20] Ron?
[21] A. Yes.
[22] Q. Does this give you a better idea as to who you
[23] were sending this text to?
[24] A. Yes.
[25] Q. Who were you sending this text to?

Page 179

[1] A. Kristin Fromosa.
[2] Q. And it says, "And your uncle isn't innocent
[3] either. He lied to Simone about adopting her, and she had
[4] to find out at the courthouse. And your uncle committed
[5] tax fraud it seemed, hoping Rima collects Simone's money."
[6] What evidence do you have today that Ron
[7] committed tax fraud?
[8] A. I don't.
[9] Q. Pardon me?
[10] A. I don't.
[11] Q. So that was not a true statement, correct?
[12] A. That is what I believed at the time. I didn't
[13] say I said it --
[14] Q. What evidence do you have here today that Ron
[15] committed tax fraud?
[16] **MR. SOBEL**: Objection. Asked and answered.
[17] **THE COURT**: Overruled. You can answer,
[18] because I heard your last answer. But just answer again.
[19] Do you have any evidence?
[20] **THE WITNESS**: No.
[21] **THE COURT**: All right. Next question.
[22] **BY MR. PODUSLENKO**:
[23] Q. Exhibit Number 91. Is this a text that you sent
[24] to Ron?
[25] A. Yes.

Page 180

[1] Q. And it is dated January 20th, correct?
[2] A. Yes.
[3] Q. And that would be of 2018?
[4] A. Yup.
[5] Q. And please turn to the third page.
[6] A. Yup.
[7] Q. Why would you send these texts to Ron, for
[8] example, and say the following -- let me just first ask
[9] you this question, you told Ron on Page 3 of that
[10] document, "You are also going to find out that your wife
[11] conspired with Bruce's brother to have him murdered."
[12] Do you see that?
[13] A. Yes.
[14] Q. And that is not true, right?
[15] A. It seems as if it might be true.
[16] Q. Okay. What evidence, sir, do you have here today
[17] that Rima conspired with Bruce's brother to have him
[18] murdered? Evidence.
[19] A. None.
[20] Q. Okay. What evidence did you have when you texted
[21] Ron? What evidence did you have that, in fact, Rima
[22] conspired with Bruce's brother to have him murdered?
[23] A. Firsthand witnesses who were there.
[24] Q. What evidence did you have, sir?
[25] **MR. SOBEL**: Objection.

171101173
Seal Vs. Seal

Case 21-01264-KCF   Doc 16-10   Filed 02/22/22   Entered 02/22/22 11:30:01   Desc
Exhibit E   Page 5 of 5

Trial (Waiver) Volume 6
November 01, 2019

Page 181

[1] MR. PODUSLENKO: Not just what people told
[2] you.
[3] MR. SOBEL: Objection.
[4] THE COURT: Overruled.
[5] BY MR. PODUSLENKO:
[6]  Q.  What actual evidence did you have that Rima
[7] conspired with Bruce's brother to have him murdered?
[8]  A.  None.
[9]  Q.  And then you say, "He didn't die from the line of
[10] duty. But lied and had him killed because he was worth a
[11] shit load of money death." I presume you meant dead,
[12] right?
[13]  A.  I would imagine.
[14]  Q.  You would agree? Not imagine.
[15]  A.  Yes.
[16]  Q.  So what evidence do you have today?
[17]  A.  None.
[18]  Q.  Okay. And what evidence did you have when you
[19] wrote this text, sir?
[20]  A.  His son.
[21]  Q.  Pardon me? Whose son?
[22]  A.  Bruce's nephew was --
[23]  Q.  What evidence do you have, sir?
[24] MR. SOBEL: Judge, he is trying to answer the
[25] question.

Page 182

[1] THE COURT: Just answer the question. --
[2] MR. PODUSLENKO: What actual evidence --
[3] THE COURT: What evidence do you have?
[4] THE WITNESS: None.
[5] THE COURT: Thank you. Next question.
[6] BY MR. PODUSLENKO:
[7]  Q.  Then you say, "Have fun explaining that to the
[8] FBI and the State of Virginia..."
[9]  A.  Can I take a look at that text, please?
[10]  Q.  "Have fun explaining that to the FBI and the
[11] state of Virginia district attorney when they come home
[12] for both of you."
[13]     Do you see that?
[14]  A.  Yes.
[15]  Q.  So you are basically threatening them and mocking
[16] them. Hey, have fun when they come.
[17]  A.  I am not threatening.
[18] THE COURT: Sir, so your answer is no -- what
[19] is your next question, Counsel?
[20] BY MR. PODUSLENKO:
[21]  Q.  So that was a matter of fact statement?
[22]  A.  Yeah.
[23]  Q.  Pardon?
[24]  A.  Yeah.
[25]  Q.  So that was such a matter of fact statement that

Page 183

[1] they should have had concern that the DA and FBI were
[2] coming after them, correct?
[3]  A.  Absolutely.
[4]  Q.  So you would agree that would be something that
[5] would worry someone that you told that to, correct?
[6]  A.  I would hope it would worry someone. It is a
[7] worrying thing.
[8]  Q.  Is that why you sent it, so they would worry?
[9]  A.  That is what I believed was still potentially
[10] possible.
[11]  Q.  You say potentially possible. Potentially,
[12] right?
[13] MR. SOBEL: Objection. Is that a question?
[14] THE COURT: Yeah. Your question is --
[15] THE WITNESS: I absolutely believe that.
[16] THE COURT: All right.
[17] THE WITNESS: Whole-heartedly.
[18] BY MR. PODUSLENKO:
[19]  Q.  Now, take a look at your deposition. In fact, I
[20] will just read it to you. Page 201, Lines 1 through 13.
[21] I asked you, "And, in fact, you say he didn't die from the
[22] line of duty. But lied and had him killed because he was
[23] worth a shit load of money?" And you say, "Yup."
[24]     Question, "Okay. So have fun explaining that to
[25] the FBI?" Answer, "Yeah." "Why did you tell him to have

Page 184

[1] fun explaining to the FBI?" Answer, "Because at that
[2] point in time, I believe the FBI was going to be
[3] involved." Question, "But they weren't, were they?"
[4] Answer, "I don't know."
[5]     That was your answer at your deposition that you
[6] didn't know whether the FBI was, in fact, involved,
[7] correct?
[8]  A.  Wait. If the FBI was involved?
[9]  Q.  Yes.
[10]  A.  Yup.
[11]  Q.  That is what your testimony was, that you didn't
[12] know at the time that you made that, that the FBI was
[13] involved, correct?
[14]  A.  No. I did believe at the time that statement was
[15] made that the FBI was involved.
[16]  Q.  I just read through your deposition transcript.
[17] So --
[18]  A.  I understand.
[19]  Q.  So that wasn't true in your deposition?
[20]  A.  I am honestly a little bit confused as to what
[21] you are saying at this point.
[22]  Q.  The question was -- again, let me read it to you.
[23] I said, "But they weren't, were they?" Answer, "I don't
[24] know," is what you said.
[25]  A.  Yes.