# EXHIBIT F



# Compressed Transcript of the Testimony of
# MATTHEW PIERSON, 5/3/19

**Case:** Seal v. Seal, et al.

Summit Court Reporting, Inc.
Phone: 215.985.2400
Fax: 215.985.2420
Email: depo@summitreporting.com
Internet: www.summitreporting.com

Case 21-01264-KCF   Doc 16-11   Filed 02/22/22   Entered 02/22/22 11:30:01   Desc
Exhibit F    Page 3 of 5

Seal v. Seal, et al.                                                   MATTHEW PIERSON, 5/3/19

Page 1

```
            THE COURT OF COMMON PLEAS
          PHILADELPHIA COUNTY, PENNSYLVANIA

                      - - -

    SIMONE A. SEAL,        :  NOVEMBER TERM, 2017
         Plaintiff,        :
         VS.               :
    RIMA VANHILL SEAL,     :
    RONALD T. SEAL, AND    :
    CITIZENS FINANCIAL     :
    GROUP, INC. d/b/a      :
    CITIZENS BANK,         :
         Defendants,       :
         VS.               :
    MATTHEW PIERSON,       :
         Third-Party       :
         Defendant.        :  NO. 01173

                      - - -

     Oral deposition of MATTHEW PIERSON,
taken at Obermayer Rebmann Maxwell & Hippel LLP,
Centre Square West, 1500 Market Street, Suite
3400, Philadelphia, Pennsylvania, on Friday,
May 3, 2019, beginning at approximately 9:10 a.m.,
before Robin Frattali, Registered Professional
Reporter and Notary Public in and of the
Commonwealth of Pennsylvania.

                      - - -
           SUMMIT COURT REPORTING, INC.
      Certified Court Reporters and Videographers
           1500 Walnut Street, Suite 1610
             Philadelphia, Pennsylvania 19102
       424 Fleming Pike, Hammonton, New Jersey 08037
       (215) 985-2400 * (800) 447-8648 * (609) 567-3315
                www.summitreporting.com
```

Page 2

```
 1   APPEARANCES:
 2
     BEZARK LERNER & DeVIRGILIS PC
 3   BY: STUART A. WINEGRAD, ESQUIRE
     1600 Market Street
 4   Suite 1610
     Philadelphia, Pennsylvania 19103
 5   (215) 735-5599
     swinegrad@bldvlaw.com
 6   Counsel for Plaintiff
 7
     OBERMAYER REBMANN MAXWELL & HIPPEL LLP
 8   BY: NICHOLAS PODUSLENKO, ESQUIRE
     Centre Square West
 9   1500 Market Street
     Suite 3400
10   Philadelphia, Pennsylvania 19102
     (215) 665-3600
11   np@obermayer.com
     Counsel for Defendants Rima Vanhill Seal and
12   Ronald T. Seal
13
     JONATHAN J. SOBEL, ESQUIRE
14   1500 Walnut Street
     Suite 2000
15   Philadelphia, Pennsylvania 19103
     (215) 735-7535
16   mate89@aol.com
     Counsel for Third-Party Defendant Matthew Pierson
17
18   ALSO PRESENT:
19
     SIMONE SEAL
20
21   RIMA VANHILL-SEAL
22
     RONALD T. SEAL
23
24
```

Page 3

```
 1                    I N D E X
 2                      - - -
 3   WITNESS:                            PAGE
 4   MATTHEW PIERSON
 5   EXAMINATION
 6   By Mr. Poduslenko                    8
 7
 8                    EXHIBITS
 9                                  PAGE FIRST
     EXHIBIT NO.    DESCRIPTION        REFERENCED
10
     Defendant's    Printout of Instagram post   33
11   Exhibit 79
12   Defendant's    Printout of text messages    36
     Exhibit 80
13
     Defendant's    Printout of text messages    43
14   Exhibit 81
15   Defendant's    Printout of text messages    59
     Exhibit 82
16
     Defendant's    Printout of text messages    94
17   Exhibit 83
18   Defendant's    Documents produced in        105
     Exhibit 84     discovery, Bates stamped P000025,
19                  P000119, P000406, P000433,
                    P000435 and P000440
20
     Defendant's    Printout of text messages    108
21   Exhibit 85
22   Defendant's    Printout of text message     138
     Exhibit 86
23
     Defendant's    Printout of text message     148
24   Exhibit 87
```

Page 4

```
 1                    EXHIBITS
 2                                  PAGE FIRST
     EXHIBIT NO.    DESCRIPTION        REFERENCED
 3
     Defendant's    Printout of text message     153
 4   Exhibit 88
 5   Defendant's    Printout of text message     153
     Exhibit 89
 6   €´
     Defendant's    Printout of text messages    179
 7   Exhibit 90
 8   Defendant's    Printout of text messages    191
     Exhibit 91
 9
     Defendant's    Printout of text message     205
10   Exhibit 92
11   Defendant's    Printout of text message     215
     Exhibit 93
12
     Defendant's    Transcription of voicemails  226
13   Exhibit 94     and CD
14   Defendant's    The Griffiths Law Office     231
     Exhibit 95     invoice dated July 26, 2017
15
     Defendant's    Temporary Protection From    237
16   Exhibit 96     Abuse Orders documents
17   Defendant's    Printout of Instagram post   251
     Exhibit 97
18
     Defendant's    Printout of Instagram post   254
19   Exhibit 98
20   Defendant's    Printout of Instagram post   255
     Exhibit 99
21
     Defendant's    Printout of email dated      259
22   Exhibit 100    November 30, 2017
23   Defendant's    Printout of text messages    265
     Exhibit 101
24
```

1 (Pages 1 to 4)

Case 21-01264-KCF    Doc 16-11    Filed 02/22/22    Entered 02/22/22 11:30:01    Desc
Exhibit F    Page 4 of 5

Seal v. Seal, et al.                                                  MATTHEW PIERSON, 5/3/19

Page 217

1   A.  That's not the case, Nick, but it's
2   what I believed.
3       Q.  By the way, would you agree with me
4   that if we go down and drive to Alexandria,
5   Virginia and show them all these documents --
6   would you like to do that, and show them and see
7   whether they want to pursue or prosecute --
8       A.  Absolutely.  Sure, let's do it.
9           MR. SOBEL:  Is that an
10  appropriate question?
11          MR. PODUSLENKO:  Yeah, it is.
12          MR. SOBEL:  Why?
13          MR. PODUSLENKO:  Well, because
14  of all these notes and how they're going to
15  be prosecuted.
16          THE WITNESS:  I absolutely
17  would love to, yeah.
18  BY MR. PODUSLENKO:
19      Q.  Good.
20          And have you provided -- why
21  don't you provide the documents in the depositions
22  to them and see --
23      A.  Sure.
24      Q.  -- whether they want to prosecute it.

Page 218

1       A.  For sure.
2           MR. SOBEL:  Now you're arguing.
3   BY MR. PODUSLENKO:
4       Q.  They will most likely kidnap her and
5   take her to their house in Spain where no one --
6   none of us will get to see her again so you need
7   to think this through.
8           All right.  So again, what
9   basis did you have to suggest that, in fact, she
10  was going to be kidnapped?
11      A.  They have her passport.  They have her
12  birth certificate.  If they believe they're going
13  to get screwed the chance of them being a flight
14  risk are high.  What person wouldn't do that if
15  they know that they're going to get in trouble?
16          MR. SOBEL:  Seems like a
17  reasonable answer.
18          THE WITNESS:  I mean, what do
19  you -- what do you want me to say?  That's
20  our fear.  Our fear is that they're going to
21  take Mariah and go to Spain because they're
22  going to get prosecuted.
23          You can laugh all you want but
24  that's the general -- that's the nature of

Page 219

1   this entire situation.
2   BY MR. PODUSLENKO:
3       Q.  I'm not laughing.  It's tragic that
4   you would seem to think that.
5       A.  Okay, well, I'm glad -- I'm glad you
6   think that this is tragic but this is the scenario
7   that we're in.  You're not having to live this, so
8   don't act like you are.
9       Q.  FYI, Simone was kidnapped from her
10  father when she was a child and her dad was dead
11  within three weeks of a kidnapping case being
12  filed.
13          So you were suggesting here --
14  not suggesting, you were telling Louis that, in
15  fact, Rima had Bruce killed.
16      A.  Yeah.  I believed she did.
17      Q.  Okay.  But what facts or evidence did
18  you have to support that, that it was true?
19      A.  Just believed it.
20      Q.  So it's okay in your mind to be able
21  to tell people that hey, Rima killed Bruce.
22      A.  Yeah.
23      Q.  That's okay for you to tell other
24  people that.

Page 220

1       A.  I believe she did it.
2       Q.  That's okay.
3       A.  Yeah.
4       Q.  And you think that's okay to tell
5   other people that.
6       A.  Yeah.  Sure.  I'm not going around
7   telling everybody.  I told the father of -- that
8   his daughter was in danger with a woman that could
9   be potentially dangerous.  So yes, I'm warning
10  him.
11      Q.  Do you think that's not damaging to
12  the person you're saying it about?
13          MR. SOBEL:  Objection.
14  BY MR. PODUSLENKO:
15      Q.  Go ahead.  Do you think that's -- do
16  you think that's damaging to the person who you
17  said it about?
18      A.  Ask her.  That's not my thing to
19  answer for you.  I don't know.
20      Q.  I'm asking you.  You're here under
21  oath.
22      A.  I'm not the one who did these things,
23  so I couldn't answer that question for you.
24      Q.  Well, this is what you said on --

Seal v. Seal, et al.                                                                    MATTHEW PIERSON, 5/3/19

Page 221

1   A. Yeah.
2   Q. This is what you said in a text. You
3   don't think -- do you think that damages the
4   person you said it about?
5   A. Don't know.
6   Q. You don't know?
7   A. Don't know.
8   Q. Okay. Do you think that you need to
9   have truth -- you actually have to have facts to
10  support when you make a statement like that to
11  whoever?
12  A. I guess we'll see.
13  Q. Well, I'm asking you what facts do you
14  have that, in fact, Bruce was murdered by Rima?
15      MR. SOBEL: Objection. Asked
16  and answered.
17      THE WITNESS: Yeah.
18  BY MR. PODUSLENKO:
19  Q. Pardon me? Sir?
20  A. It's been asked and answered.
21  Q. Well, what was the -- what's your
22  answer?
23  A. I'm not answering again. You have it
24  in -- it's in the deposition. She has it

Page 222

1   recorded.
2   Q. Give me a single actual fact. Sir,
3   give me a single actual fact.
4   A. No, I'm not going to.
5   Q. Because you know it's not true, right?
6   A. No, I don't know it's not true. You
7   can -- you believe whatever you want. I'm going
8   to sit here and believe whatever I want.
9   Q. Well, sir, at trial you're going to
10  have to support it.
11  A. Okay.
12      MR. SOBEL: Objection. Do you
13  want to have a conversation with him or do
14  you want to ask questions?
15      MR. PODUSLENKO: I am asking
16  questions.
17      MR. SOBEL: "At trial you're
18  going to have to support it." That's a
19  question?
20      MR. PODUSLENKO: Yeah,
21  absolutely.
22      MR. SOBEL: Where? Where?
23      Nick, just get through it. All
24  right?

Page 223

1       MR. PODUSLENKO: I am trying to
2   get through it.
3       MR. SOBEL: Then stop
4   editorializing. Please.
5   BY MR. PODUSLENKO:
6   Q. Did you ever have conversations or
7   leave voicemails for Louis relating to the issues
8   of kidnapping?
9   A. Honestly I have no idea.
10  Q. Did you ever tell Louis that Ron and
11  Rima were backed into a corner?
12  A. Possibly.
13  Q. Pardon me?
14  A. Possibly. I don't remember. I don't
15  remember what conversations I had with Louis
16  beside that one.
17  Q. And when was that conversation? This
18  text was in 2018?
19  A. Yeah, but I don't -- I don't -- I
20  don't know honestly know. I can't --
21      MR. SOBEL: Can you identify
22  what you're referring?
23      MR. PODUSLENKO: I'm sorry.
24  D-93.

Page 224

1       THE WITNESS: What does it say?
2   BY MR. PODUSLENKO:
3   Q. It doesn't say.
4   A. I don't know that it was 2018. I
5   don't -- I don't remember when it was. It was a
6   long time ago.
7   Q. Okay. It was -- was it after the
8   lawsuit was filed?
9   A. I believe this was in 2017, that text.
10  Q. That text?
11  A. That text was in 2017.
12  Q. And when in 2017?
13  A. I don't know, but it wasn't 2018.
14  Q. All right. And in fact, there was a
15  protection for abuse case that was brought?
16  A. Uh-huh.
17  Q. That's a yes?
18  A. Against?
19  Q. Rima.
20  A. Yes.
21  Q. And that was something that you
22  actually participated in filing.
23  A. I was there, I didn't file it.
24  Q. You were there.

56 (Pages 221 to 224)